1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PACTOOL  INTERNATIONAL LTD.,

                    Plaintiff,

          v.

KETT TOOL COMPANY INC., et al.,

                    Defendants.

CASE NO. C06-5367BHS

ORDER GRANTING IN PART
AND DENYING IN PART
PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY
JUDGMENT OF
LITERAL INFRINGEMENT

This matter comes before the Court on Plaintiff PacTool International Ltd.'s ("PacTool") motion for partial summary judgment of literal infringement (Dkt. 59).  The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

## I. PROCEDURAL AND FACTUAL BACKGROUND

This action was filed on June 29, 2006.  Dkt. 1.  This is a patent case arising under federal patent law.  *See generally* Dkt. 63.  This Court has original subject matter jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1338(a) (an Act of Congress governing patent cases).  PacTool's amended complaint alleges that Defendant Kett Tool Company Inc. ("Kett") and H. Rowe Hoffman ("Hoffman") have been and are infringing – directly, contributorily and/or by inducement – technology contained in patents owned by PacTool by manufacturing, using, selling

1    and/or offering for sale products that infringe such technology.  Dkt. 63 at 3-6.  The

2    products at issue contain fiber-cement cutting technology that PacTool maintains is

3    protected by its patents.  *Id*. at 2.

4           In December of 2007, Kett requested reexamination of the patents-in-suit in the

5    United States Patent and Trademark Office.  *See* Dkt. 30.  On February 1, 2008, the Court

6    granted Kett's request for a stay of this litigation until the reexamination procedures were

7    completed.  Dkt. 39.  The reexamination proceedings were terminated in December of

8    2009 and the stay was terminated on December 18, 2009.  *See* Dkt. 48.  On April 1, 2010,

9    the Court granted PacTool's motion to amend its complaint to add Hoffman as a

10   Defendant.  Dkt. 61.

11          On March 25, 2010, PacTool filed a motion for partial summary judgment of

12   literal infringement.  Dkt. 59.  On April 12, 2010, Kett filed a response (Dkt. 66) and on

13   April 16, 2010, PacTool replied (Dkt. 71).

14          On April 26, 2010, Defendants filed their motion requesting the Court to dismiss

15   or transfer this action for improper venue, or in the alternative, to transfer this action to

16   the Southern District of Ohio pursuant to 28 U.S.C. § 1404.  Dkt. 75.  Further, Hoffman

17   requested that the Court dismiss or transfer the causes of action against him for lack of

18   personal jurisdiction and/or for failure to state a claim upon which relief can be granted.

19   *Id*.  On July 7, 2010, the Court issued an order granting in part and denying in part Kett

20   and Hoffman's motion and transferred the case to the Southern District of Ohio.  Dkt. 93.

21   On July 8, 2010, Kett filed a statement noting the death of Hoffman.  Dkt. 94.  On July

22   14, 2010, PacTool filed a motion for reconsideration of the Court's order regarding

23   transfer.  Dkt. 96.  On August 25, 2010, the Court granted PacTool's motion and

24   reopened the case.  Dkt. 103.

25          On September 23, 2010, the Court ordered the parties to file briefing on whether it

26   was necessary for the Court to conduct a claim construction proceeding prior to deciding

27   PacTool's motion for partial summary judgment.  Dkt. 106.  After considering the parties'

28

submissions, on December 15, 2010, the Court issued an order in which it concluded that claim construction was not necessary for the Court to decide PacTool's motion for partial summary judgment of literal infringement (Dkt. 129) and renoted PacTool's motion (Dkt. 59), which is now before the Court.

## II. DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The

1  nonmoving party may not merely state that it will discredit the moving party's evidence at

2  trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec.*

3  *Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, nonspecific

4  statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan*

5  *v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

6  **B.    Literal Infringement**

7         Determining patent infringement requires that a court determine whether someone

8  (1) without authority (2) makes, uses, offers to sell, sells, or imports (3) the patented

9  invention (4) within the United States, its territories, or its possessions (5) during the term

10  of the patent. *Cyrix Corp. v. Intel Corp.*, 77 F.3d 1381 (Fed. Cir. 1996). Typically,

11  determining whether a claim in a patent has been infringed is a two-step process. *Baxter*

12  *Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575. First, it is necessary to determine

13  what the words in the claim mean. *Markman v.Westview Instr. Inc.*, 517 U.S. 370, 374

14  (1996). Second, once a claim is interpreted, it is necessary to determine if the claim

15  covers the accused device. *Id*. "Literal infringement of a claim exists when every

16  limitation recited in the claim is found in the accused device, i.e., when the properly

17  construed claim reads on the accused device exactly." *Strattec Sec. Corp. v. General*

18  *Auto. Specialty Co.*, 126 F.3d 1411, 1418 (Fed. Cir. 1997).

19         Here, although Kett has argued that the Court should conduct a claim construction

20  hearing in this case (*see* Dkts. 66, 113), the Court has concluded that claim construction is

21  not necessary to decide the instant motion as Kett has not identified any claim terms at

22  issue in the motion that need to be construed. *See* Dkt. 129. Accordingly, the issue of

23  literal infringement, for purposes of deciding PacTool's motion, turns on whether the

24  accused devices infringe the claims as written. *See Baxter*, 49 F.3d at 1583.

25         The claims at issue in the instant motion are Claim 16 of the '303 Patent and

26  Claims 10 and 19 of the '998 Patent. Dkt. 59 at 10-17. In PacTool's motion, it lays out a

27

28

1   chart separating the claims into elements and explains how each element reads on the
2   accused devices.  *Id*.

3         **1.**     **Accused Devices**

4         There are two groups of accused devices that PacTool maintains infringe on its
5   claims.  The first is represented by Kett Model KC-193.  The Court concludes that Kett's
6   argument that this model has been discontinued is irrelevant to whether the device
7   infringed on PacTool's claims as Kett does not argue that the KC-193 was still being sold
8   after the '303 and '998 patents were issued.  *See* 35 U.S.C. § 271(6) (stating that
9   infringement is measured from the date of issuance of a patent).

10        Next, PacTool maintains that the evidence it has presented establishes that the
11  second group of accused devices, depicted in Bates KETT03295 and KETT0331-32 (Dkt.
12  59-3 at 46, 48-49), are "representative of all of Kett's fiber-cement cutting shears." Dkt.
13  71 at 12.  While Kett makes an argument that the conversation between counsel for
14  PacTool and counsel for Kett should not be used for evidence and alludes to the fact that
15  this conversation may have been for purposes of settlement, Kett does not present any
16  evidence that the statement is false or was made during a settlement discussion.
17  Moreover, Kett never alleges that the statement is false, but simply states that PacTool
18  has not proven the statement to be true.  In addition, counsel for PacTool submitted a
19  declaration stating that the statement at issue did not take place during settlement
20  discussions.  Dkt. 71-2 at 2.  Therefore, based on the evidence presented and Kett's lack
21  of response, the Court concludes that PacTool has established that Kett's accused devices,
22  depicted in Bates KETT03295 and KETT0331-32 (Dkt. 59-3 at 46, 48-49), are
23  representative of all Kett's fiber-cement cutting shears currently sold (Dkts. 59-2 at 1-2,
24  71 at 12 & 71-2 at 2).

25        **2.**     **Preamble to Claim 16 of the '303 Patent and Claims 10 and 19 of the**
                **'998 Patent**
26
27        The preamble to Claim 16 of the '303 patent and Claims 10 and 19 of the '998
28  patent are identical to each other and consist of the following language: "A fiber-cement

1   cutting tool, comprising: . . . ." Dkt. 59-3 at 87, 90 and 93.  Kett states in its objections to

2   the claim charts that, with respect to these preambles, it admits that its accused devices

3   are cutting tools but denies that they are used exclusively for cutting fiber cement.  *Id*.

4   However, the fact that Kett's accused devices are not used exclusively for fiber-cement

5   cutting does not defeat PacTool's argument that they literally infringe the claims because

6   Kett's products, when used to cut fiber cement, still fit within the language stated in the

7   preambles.  Therefore, Kett's objection to the preamble language does not defeat

8   PacTool's motion regarding literal infringement.

9          **3.     Claim 16 of the '303 Patent**

10          Kett admits that, with the exception of two elements, all other elements of Claim

11  16 of the '303 Patent are infringed by Kett's accused devices.  Dkt. 59-3 at 87-89.  Kett's

12  objection regarding these elements is that its accused devices do not infringe Claim 16

13  because the spacing of the devices falls outside the range listed in Claim 16.  Dkt. 66 at

14  14.  The element at issue in Claim 16 states as follows: "the first side surface being

15  spaced apart from the first interior by 0.04 to 0.055 inches and the second side surface

16  being spaced apart from the second interior surface by 0.04 to 0.055 inches."  Dkt. 59-3 at

17  88-89.  PacTool contends that, according to the deposition testimony of Kett's past and

18  present presidents, William Berlier and Kathy Conlon, the actual spacing for Kett Model

19  KC-193 is 0.040 to 0.045 inches, which falls within the range stated in Claim 16, and that

20  the spacing used in the KC-193 is the same used for all Kett products used to cut fiber

21  cement.  Dkt. 59 at 12.  In Mr. Berlier's deposition he is asked, "[s]o are you confident

22  that the spacing between the cutting blade in that device and the inside of the side knives

23  is somewhere in the range of [0.04 to 0.055] inches?"  Dkt. 59-3 at 52.  He then answers,

24  "I think it's very reasonable to think that."  *Id*.  He is then asked, "[a]nd would that be

25  true for all of the Kett products that are used to cut fiber cement?"  *Id*.  Mr. Berlier then

26  states, "Um-hum."  In Ms. Conlon's deposition, she is asked, "[s]o, in fact, every tool,

27  every fiber cement shear product that Kett manufactures and sells with the thin blade will

28

ORDER - 6

1    have a gap of [0.04 to 0.045] inches, correct?" *Id*. at 58.  Counsel for Kett then objects,

2    stating that the question assumes facts not in evidence and lacks foundation. *Id*.  Ms.

3    Conlon then states, "[t]he [0.038] to the [0.043] the way I'm reading it is on the blade

4    itself, so that would be adding the [0.02].  Yes, that would be within that range." *Id*.  Ms.

5    Conlon is then asked, "[o]f [0.04] to [0.045]?" to which she answers, "Yes." *Id*.

6         In Kett's objections to the claim charts, Kett states that its accused devices do not

7    necessarily fit within the spacing range listed in the element of Claim 16.  Dkt. 59-3 at

8    88-89.  In Kett's response to the instant motion, it states specifically that "the distance

9    between the center blade and a side knife in the Kett Model KC-193 could be as small as

10   0.0324 inches or as large as 0.0606 inches, well outside of both of the ranges recited in

11   Claim 16 of the '303 patent." Dkt. 66 at 14.  In support of this statement, Kett relies on a

12   declaration submitted by Alexander Rozumovich, Director of Engineering for Kett, in

13   which he states that "[t]he distance between the center blade and a side knife in the Kett

14   Model KC-193 could be as small as 0.0324 inches or as large as 0.0606 inches." Dkt. 65-

15   2 at 2.  In its reply to Kett's response, PacTool maintains that Mr. Rozumovich's

16   statement that the spacing in Kett's KC-193 "could" be as small as 0.0324 or as large as

17   0.0606 inches is mere speculation and that he "offers no document, drawing, testimony or

18   [other] evidence to support the fact that what he suggests 'could' take place ever in fact

19   took place." Dkt. 71 at 13.

20        The Court concludes that, based on the answers given in the depositions of Mr.

21   Berlier and Ms. Conlon, and the declaration submitted by Mr. Rozumovich, a question of

22   fact may exist as to whether Claim 16 of the '303 patent is literally infringed by Kett's

23   accused devices.  Specifically, the deposition testimony submitted by PacTool and the

24   declaration submitted by Kett appear to create a question of fact regarding the spacing of

25   the center blade and the side knives of the accused devices such that the Court cannot

26   grant summary judgment of literal infringement based on the evidence before it.

27   However, the Court notes that if either party has additional evidence it believes supports

28

1     its position such that this issue can be decided as a matter of law, the Court will consider

2     a subsequent motion on the issue if filed prior to the dispositive motion deadline.

3           **4.**      **Claims 10 and 19 of the '998 Patent**

4          Kett admits that, with the exception of two elements, all other elements of Claims

5     10 and 19 of the '998 Patent are infringed by Kett's accused devices. Dkt. 59-3 at 91-92,

6     94-95. Kett's objection to these elements is that its accused devices are used to cut one-

7     half-inch cement board and that when they are used to cut this size board, they do not

8     infringe on the spacing listed in Claims 10 and 19 of the '998 patent. The element at

9     issue, which is identical in both Claims 10 and 19, states as follows: "wherein the first

10     side spacing and the second side spacing are from 13% to 22% of a thickness of a fiber-

11     cement workpiece to be cut with the blade." PacTool asserts that Kett's accused devices,

12     both Kett Model KC-193 (Dkt. 59-3 at 38) and the devices depicted in Kett drawings –

13     Bates KETT03295 and KETT0331-32 (*id*. at 46, 48-49) – literally infringe Claims 10 and

14     19 when the devices are used to cut one-quarter inch fiber cement. Dkt. 59 at 12-17. Kett

15     does not specifically dispute PacTool's assertion that its accused devices infringe the

16     spacing percentages listed in Claims 10 and 19 when cutting one-quarter-inch fiber

17     cement; rather, Kett maintains that its devices are used to cut one-half-inch fiber cement

18     and when doing so, do not infringe the claims. PacTool maintains that the evidence

19     clearly shows that Kett's devices are capable of cutting one-quarter-inch fiber cement,

20     that Kett has not shown otherwise, and that, therefore, the accused devices literally

21     infringe Claims 10 and 19.

22          In addition to its other arguments, Kett relies on a Federal Circuit case for the

23     proposition that "a device that 'is capable of being modified to operate in an infringing

24     manner is not sufficient, by itself, to support a finding of infringement.'" Dkt. 66 at 15

25     (quoting *Telemac Cellular*, 247 F.3d 1316, 1330 (Fed. Cir. 2001)). However, in *Telemac*,

26     the Court of Appeals specifically relied on a restriction built into the accused device that

27     prevented the device from infringing the patent in affirming the district court's conclusion

28

that plaintiff's allegations of literal infringement failed.  Here, unlike in *Tarmac*, Kett has not asserted that its accused devices are equipped with some kind of restriction that prevents them from cutting one-quarter-inch fiber cement and therefore infringing Claims 10 and 19.  Moreover, Kett has not specifically stated that its devices are not used to cut one-quarter-inch fiber cement; rather, it states that PacTool has not proven that the devices cut one-quarter-inch fiber cement.  The Court concludes that, based on the evidence, the accused devices are capable of cutting one-quarter-inch fiber cement and may infringe on the claims as discussed below.

In support of its assertion that the accused devices, as depicted in Bates KETT03295 and KETT0331-32 (Dkt. 59-3 at 46, 48-49), cut one-quarter-inch fiber cement, PacTool cites to the deposition testimony of Hoffman in which he states that the accused device "[c]uts anything quarter inch on."  Dkt. 59-3 at 63.  In addition, PacTool cites to Kett's website which states that the accused device is capable of cutting fiber cement "up to 1/2" thick."  Dkt. 71-2 at 4.  When the spacing given for these accused devices is compared with one-quarter-inch fiber cement, the devices literally infringe Claims 10 and 19 because they fit within the 13% to 22% limitations listed in the claims. Therefore, the Court concludes that PacTool is entitled to summary judgment of literal infringement of Claims 10 and 19 of the '998 patent by the accused devices as depicted in Bates KETT03295 and KETT0331-32 (Dkt. 59-3 at 46, 48-49).

In arguing that the KC-193 literally infringes Claims 10 and 19, PacTool relies on the deposition testimony of Mr. Berlier and Ms. Conlon, along with Kett literature for Kett Model KC-193, to show that the KC-193 is capable of cutting one-quarter-inch fiber cement and that, when doing so, infringes Claims 10 and 19.  In asserting that KC-193 infringes these claims, PacTool relies on the spacing for this device of 0.040 to 0.045 inches, which it alleges is supported by Mr. Berlier and Ms. Conlon's testimony.  As the Court previously concluded with respect to Claim 16 of the '303 patent, based on the deposition testimony and the declaration of Mr. Rozumovich, there is a question of fact as

to whether the spacing in KC-193 is between 0.040 to 0.045.  Therefore, the Court

concludes that PacTool is not entitled to summary judgment of literal infringement of

Claims 10 and 19 of the '998 patent by Kett Model KC-193.  As the Court stated above, if

either party wishes to present additional evidence to show that this issue should be

resolved as a matter of law, the Court will consider a subsequent motion on the issue if

filed prior to the dispositive motion deadline.

### 5. Kett's Additional Arguments

First, Kett's arguments regarding claim construction do not affect the Court's

decision on the instant motion as the Court has ruled that claim construction was not

necessary prior to deciding the motion.  *See* Dkt. 129.  Second, Kett's argument that the

claims involved in the instant motion should have been reexamined is without merit as

Kett could have sought reexamination on those claims.  Third, Kett's assertions regarding

judicial economy do not affect the Court's decision on the motion as the Court has

discretion to rule on literal infringement while issues of invalidity and unenforceability

are pending.  Next, Kett's argument that PacTool's claims are invalid and/or

unenforceable and that Claims 10 and 19 of the '998 patent are indefinite may be

considered in a separate motion for summary judgment.  Finally, Kett's contention that

PacTool's motion is without merit because it is not supported by expert testimony is

irrelevant as the Court has concluded that PacTool has presented evidence sufficient to

support granting the motion in part.  There is no specific requirement that a motion for

summary judgment of literal infringement be supported by expert testimony.

**III. ORDER**

Therefore, it is hereby **ORDERED** that PacTool's motion for summary judgment of literal infringement (Dkt. 59) is **GRANTED in part** and **DENIED in part** as discussed herein.

DATED this 31st day of January, 2011.

BENJAMIN H. SETTLE
United States District Judge