THE HONORABLE BENJAMIN H. SETTLE

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

| | |
|---|---|
| PACTOOL INTERNATIONAL LTD., a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>KETT TOOL COMPANY INC., et al.,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**CASE NO. 3:06-cv-05367-BHS**

**DEFENDANT KETT TOOL COMPANY INC.'S OPENING CLAIM CONSTRUCTION BRIEF**

**NOTE ON MOTION CALENDAR: March 18, 2011**

**ORAL HEARING REQUESTED**

Defendant Kett Tool Company Inc. ("Kett") submits this opening claim construction brief per the Court's Order [Doc. No. 143] dated January 21, 2011.

**I.     CLAIM TERMS TO BE CONSTRUED**

The parties dispute the construction to be given several of the terms appearing in the two patents-in-suit, U.S. Patent No. 5,993,303 ("the '303 patent," copy attached as Exhibit 1) and U.S. Patent No. 6,250,998 ("the '998 patent," copy attached as Exhibit 2), along with their respective Reexamination Certificates, 5,993,303 C1 ("the '303 C1 Certificate") and 6,250,998 C1 ("the '998 C1 Certificate") (copies attached as Exhibits 3 and 4).  The claims at issue are claims 2, 3, 4, 8, 11, 12, 16, 21, 23, 24 and 25 of the '303 patent and '303 C1

Defendant Kett Tool Company Inc.'s
Opening Claim Construction Brief          - 1

WOOD, HERRON & EVANS, L.L.P.
2700 Carew Tower · 441 Vine Street
Cincinnati, Ohio  45202-2917
(513) 241-2324 · (513) 241-6234 facsimile

Certificate, and claims 1, 2, 3, 7, 10, 12, 13, 15, 16, 18, 19, 21, 22 and 24 of the '998 patent and '998 C1 Certificate.  A Joint Claim Chart identifying the disputed claim terms and the parties' proposed construction of those terms was filed with the Court on February 25, 2011 [Doc. No. 164-1] and is attached hereto as Exhibit 5.

## II.      LEGAL STANDARDS FOR CONSTRUING CLAIMS

### A.      The Claims Are The Primary Resource For Claim Construction

In construing claims, the Court must look first to the language of the claims themselves.  *See, e.g. Middleton, Inc. v. Minnesota Mining & Mfg. Co.,* 311 F.3d 1384, 1387 (Fed. Cir. 2002).  Both the asserted claims, and any claims that are not asserted, should be considered.  *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1352 (Fed Cir. 2010) ("In addition, 'other claims of the patent . . . can also be valuable sources of enlightenment as to the meaning of a claim term.'").  *Id.* (*citing Vitronics Corp. v. Conceptronics, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

For purposes of claim construction, "the words of a claim 'are generally given their ordinary and customary meaning…'"  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (*quoting Vitronics*, 90 F.3d at 1582).  The ordinary and customary meaning "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application."  *Id.* at 1313.

A claim construction that renders a claim term meaningless is improper.  *See Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 885 (Fed. Cir. 2008) (refusing to adopt a claim construction which would render a claim limitation meaningless).  Otherwise stated, if a party proposes a claim construction that would make a claim term superfluous, it should not

WOOD, HERRON & EVANS, L.L.P.
2700 Carew Tower · 441 Vine Street
Cincinnati, Ohio  45202-2917
(513) 241-2324 · (513) 241-6234 facsimile

be adopted.  *Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302, 1305-07 (Fed. Cir. 2000) (refusing to adopt a claim construction which would render claim language superfluous).

### B.    The Specification Provides Context For The Invention And Claim Terms

The claims, however, do not stand alone, and "must be read in view of the specification of which they are a part."  *Phillips*, 415 F.3d at 1315 (*quoting Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996)).  "[T]he specification is always highly relevant to the claim construction analysis."  *Vitronics*, 90 F.3d at 1582.  However,

> it is improper to import limitations from the specification into the claims where there is no indication that the specific examples in the specification are intended to be strictly coextensive with the claim.

*Phillips*, 415 F.3d at 1323; *see also Kinetic Concepts, Inc. v. Blue Sky Med. Group, Inc.*, 554 F.3d 1010, 1027 (Fed. Cir. 2009).

### C.    The Prosecution History

In addition to the claim language and the specification, the court may also consider the patent's prosecution history.  *Phillips*, 415 F.3d at 1317.  The prosecution history, which is part of the "intrinsic evidence," consists of the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent.  *Id.*  Because the patentee creates the prosecution history in attempting to explain and obtain the patent, "the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would

WOOD, HERRON & EVANS, L.L.P.
2700 Carew Tower · 441 Vine Street
Cincinnati, Ohio  45202-2917
(513) 241-2324 · (513) 241-6234 facsimile

1    otherwise be." *Id.*

2        **D.      Extrinsic Evidence Such As Dictionaries May Be Utilized**

3        Extrinsic evidence "consists of all evidence external to the patent and prosecution

4    history, including . . . , dictionaries, and learned treatises." *Markman v. Westview*

5    *Instruments, Inc.*, 52 F.3d 967, 980 (Fed Cir 1995), *aff'd*, 517 U.S. 370, 116 S. Ct. 1384, 134

6    L. Ed. 2d 577 (1996).  A dictionary definition may be relied upon "so long as [it] does not

7    contradict any definition found in or ascertained by a reading of the patent documents."

8    *Wavetronix v. EIS Elec. Integrated Sys.*, 573 F.3d 1343, 1355 (Fed. Cir. 2009) (*quoting*

9    *Phillips*, 415 F.3d at 1322-23).

10

11       **E.      Inventor Testimony Is Irrelevant**

12       Based on PacTool's identification in the Joint Claim Chart (Exhibit 5) of extrinsic

13   evidence in the form of deposition testimony and newly created Declarations from, among

14   others, one of the named inventors on the patents-in-suit, this Court should be aware that

15   such testimony is highly disfavored by the Federal Circuit.  Kett will address this issue, and

16   the specific improper evidence PacTool submits, when Kett files its Responsive Claim

17   Construction Brief.

18

19       The Federal Circuit has "often repeated that inventor testimony is of little probative

20   value for purposes of claim construction." *E-Pass Techs. Inc. v. 3COM Corp.*, 343 F.3d

21   1364, 1370 n.5 (Fed. Cir. 2003). Some Federal Circuit panel opinions have gone so far as to

22   declare inventor testimony "irrelevant" to claim construction.  *See Cordis Corp. v. Boston*

23   *Sci. Corp.*, 561 F.3d 1319, 1338 (Fed. Cir. 2009); *see also Hoechst Celanese Corp. v. BP*

24   *Chems. Ltd.*, 78 F.3d 1575, 1580 (Fed. Cir. 1996) ("*Markman* requires us to give no

25   deference to the testimony of the inventor about the meaning of the claims.").

26

Defendant Kett Tool Company Inc.'s
Opening Claim Construction Brief         - 4 -

WOOD, HERRON & EVANS, L.L.P.
2700 Carew Tower · 441 Vine Street
Cincinnati, Ohio  45202-2917
(513) 241-2324 · (513) 241-6234 facsimile

1        In *Markman v. Westview Instruments Inc.*, 52 F.3d 967, 983 (Fed. Cir. 1995) (en

2   banc), *aff'd*, 517 U.S. 370 (1996), the court found an inventor not competent to construe

3   patent claims, reasoning that:

4           Commonly the claims are drafted by the inventor's patent
5           solicitor and they may even be drafted by the patent examiner
            in an examiner's amendment (subject to the approval of the
6           inventor's solicitor). While presumably the inventor has
            approved any changes to the claim scope that have occurred via
7           amendment during the prosecution process, it is not unusual for
            there to be a significant difference between what an inventor
8           thinks his patented invention is and what the ultimate scope of
            the claims is after allowance by the PTO.
9

10  *Id.* at 985.   Lending further support for excluding inventor testimony from claim

11  construction is the fact that it "is often a self-serving, after-the-fact attempt to state what

12  should have been part of his or her patent application." *Bell & Howell Document*

13  *Management v. Altek Sys.*, 132 F.3d 701, 706 (Fed. Cir. 1997); *see also Roton Barrier Inc. v.*

14  *Stanley Works*, 79 F.3d 1112, 1126 (Fed. Cir. 1996) ("We have previously stated that an

15  inventor's after-the-fact testimony is of little weight compared to the clear import of the

16  patent disclosure itself.").   When construing a patent, a court is better served by evaluating

17  the claims and specification *objectively* from the perspective of one of ordinary skill in the

18  art, rather than relying on the *subjective* testimony of the inventor obtained in the context of

19  litigation.  *See Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1379-80 (Fed. Cir. 2000).

20

21       **F.**   **The Accused Product Is Not To Be Considered In The Claim**
22            **Construction Analysis**

23       Finally, it is well-settled that the construction of patent claims is not dependent upon

24  the products accused of infringement.  *Wilson Sporting Goods Co. v. Hillerich & Bradsby*

25  *Co.*, 442 F.3d 1322, 1330-31 (Fed. Cir. 2006) ("This court, of course, repeats its rule that

26

WOOD, HERRON & EVANS, L.L.P.
2700 Carew Tower · 441 Vine Street
Cincinnati, Ohio 45202-2917
(513) 241-2324 · (513) 241-6234 facsimile

1  'claims may not be construed with reference to the accused device.'") (*citing NeoMagic*

2  *Corp. v. Trident Microsystems*, 287 F.3d 1062, 1074 (Fed. Cir. 2002)).  Thus, any attempt by

3  PacTool to consider the accused products in connection with claim construction is off base,

4  and in fact impermissible.

5  **III.     THE DISPUTED TERMS OF THE '303 AND '998 PATENTS**

6       **A.     Overview Of The '303 Patent**

7            The '301 patent and '303 C1 Certificate, entitled "Hand-Held Cutting Tool For

8  Cutting Fiber-Cement Siding" issued on November 30, 1999 and December 1, 2009,

9  respectively.  *See* Exhibits 1 and 3.  The written description and 11 claims of the '303 patent

10  and '303 C1 Certificate disclose and claim a fiber-cement siding cutting tool.  *Id.*  Figures 1

11  and 3 of the '303 patent illustrate a cutting tool of the preferred embodiment of the '303

12  patent.  *Id.*

13       **B.     Overview Of The '998 Patent**

14            The '998 patent and '998 C1 Certificate, entitled "Hand-Held Cutting Tool For

15  Cutting Fiber-Cement Siding," issued on June 26, 2001 and December 8, 2009, respectively,

16  and claim priority back to the '303 patent.  *See* Exhibits 2 and 4.  Because the '998 patent is

17  related to the '303 patent as a continuation application, the disclosure of the '998 patent is the

18  same as the '303 patent and references herein to the specification of the '303 patent are

19  equally applicable to the '998 patent.

20       **C.     Grouping Of Claim Terms In Dispute**

21            Kett asserts that the claim terms and phrases listed in the Joint Claim Chart (Exhibit

22  5) should be grouped as follows for purposes of analysis and decision:

WOOD, HERRON & EVANS, L.L.P.
2700 Carew Tower · 441 Vine Street
Cincinnati, Ohio 45202-2917
(513) 241-2324 · (513) 241-6234 facsimile

**Group I:**     terms 1 and 2[1];

**Group II:**     terms 3-13; and

**Group III:**     terms 14-17.

The bases for suggesting these groupings are that:  1) the Group I terms 1 and 2 ("gap" and "gap distance") are very similar, Kett's proposed definitions for these two terms are the same, and PacTool's proposed definitions for these two terms are virtually identical (they differ only by a single word); 2) the Group II terms 3-13 all present the identical issues insofar as the parties' dispute over the definitions are concerned, and thus resolution of the disputes as to those terms can be made with a single decision; and 3) the Group III terms 14-17 all present the issue of indefiniteness under 35 U.S.C. § 112.

**D.     Support For Kett's Proposed Definitions**

**1.     Group I**

The dispute between the parties as to the proper construction of the Group I terms 1 and 2 essentially presents one issue:  whether the degree or amount of separation between the inner surfaces of the two side knives needs to be defined with a frame of reference for determining the degree or amount of separation (i.e., as measured along a line perpendicular to the axes of the first and second fingers or guide members).  Kett asserts that a proper construction <u>does</u> require such a frame of reference.  Otherwise, the Group I terms are indefinite under 35 U.S.C. § 112.

The Group I terms are "gap" and "gap distance" which are found in claims 8, 16, 21 and 25 of the '303 patent and claims 1, 2, 3, 7, 10, 13, 16, 19, and 22 of the '998 patent.

**A.** ─────────────────────

[1] The reference to "term #" is taken from the left-hand column of the Joint Claim Chart (Exhibit 5).

WOOD, HERRON & EVANS, L.L.P.
2700 Carew Tower · 441 Vine Street
Cincinnati, Ohio  45202-2917
(513) 241-2324 · (513) 241-6234 facsimile

**Kett's Proposed Construction**:  "The degree of amount of separation between the first and second interior surfaces, as measured along a line perpendicular to the axis of the first and second fingers or guide members."

Figure 3 of the '303 and '998 patents (Exhibits 1 and 2), reproduced below for the convenience of the Court, identifies the "gap" or the "gap distance" by the letter "G."



*Fig. 3*

This "gap distance G" or "gap width G" is further explained in the respective specifications to be the distance "between the first interior surface *64a* of the first finger *60a* and the second interior surface *64b* of the second finger *60b*."  Exhibit 1 at col. 4, ll. 13-15 and Exhibit 2 at col. 4, ll. 19-21.  Accordingly, Kett's proposed claim construction language that reads, ". . . between the first and second interior surfaces . . .," is a virtual verbatim quotation from the specification.

Moreover, while the detailed descriptions for both the '303 and '998 patents refer to first and second "*finger*s" *id*., the claims of the '998 patent refer to first and second "*members*" as opposed to "fingers."  However, for the purposes of construing the term "gap" or "gap distance," this semantic variation is of no import.  Accordingly, Kett's proposed claim construction language which further reads in relevant part, ". . . the first and second

WOOD, HERRON & EVANS, L.L.P.
2700 Carew Tower · 441 Vine Street
Cincinnati, Ohio 45202-2917
(513) 241-2324 · (513) 241-6234 facsimile

fingers or guide members . . .," is phrased in the disjunctive so that a single construction may be applicable to the claims of both patents-in-suit.

Turning next to Kett's proposed claim construction language which reads, "[t]he degree of amount of separation between . . .," Kett simply calls to the Court's attention the common dictionary definitions for a "gap" and a "distance."  For example a "gap" is often defined as "a separation in space."  (Exhibits 6 and 7 at KETT 06754 & 06758.)  And "distance" is often defined as "the degree or amount of separation between" something. (Exhibits 6-8 at KETT 06753, 06757, & 06761.)  Hence, Kett's proposed claim construction language which reads, "[t]he degree of amount of separation between . . .," is taken directly from the common dictionary definitions for "gap" and/or "distance."

Finally, turning to the frame of reference dispute between the parties' respective claim constructions, Kett's proposed claim construction language, which reads in relevant part, ". . . as measured along a line perpendicular to the axis of . . .," is derived first again from Figure 3 of the '303 and '998 patents (Exhibits 1 and 2).  Here, to state the obvious, it is unmistakable that the lines which define "G," i.e., the "gap" or the "gap distance," are parallel to the axis of the first finger **60a** and the second finger **60b**.  *Id*.  Or said another way, as Figure 3 illustrates, the two opposing arrows that define the "gap distance G" or "gap width G" are perpendicular to the axis of the first finger **60a** and the second finger **60b**.  *Id.*

The common dictionary definitions for "gap" and/or "distance" further reinforce Kett's proposed construction.  For example, an example given of a "gap" is "the <u>shortest distance</u> between the planes of the chords of the upper and lower wings of biplane."  (Exhibit 6 at KETT 06754) (emphasis added).  Clearly, the shortest distance between the upper and lower wings would be a line perpendicular to those wings.

Defendant Kett Tool Company Inc.'s
Opening Claim Construction Brief          - 9 -

WOOD, HERRON & EVANS, L.L.P.
2700 Carew Tower · 441 Vine Street
Cincinnati, Ohio  45202-2917
(513) 241-2324 · (513) 241-6234 facsimile

Similarly, "distance" is further commonly defined as "the degree or amount of separation between two points, lines, surfaces, or objects in geometrical space <u>measured along the shortest path joining them,</u>" or as "<u>the length of the perpendicular</u> from a given point to a given line."  (Exhibits 6, 8 and 9 at KETT 06753, 06761, & 06764) (emphasis added).

Accordingly, Kett respectfully submits that the terms "gap" and "gap distance" should be construed as "[t]he degree of amount of separation between the first and second interior surfaces, as measured along a line perpendicular to the axis of the first and second fingers or guide members."

### 2. Group II

The dispute between the parties as to the proper construction of the Group II terms 3-13 essentially presents two issues.  The first issue is whether the recitation in these terms of specific spacing dimensions needs to be defined with a frame of reference for determining the recited spacing (i.e., as measured along a line perpendicular to the axis of the first and second fingers or guide members).  The second issue is whether such spacing dimensions must be uniform along the length of the fingers or guide members (i.e., is there an inherent requirement that the guide members or fingers have surfaces that are parallel to the side surfaces of the center blade).  As to the first issue, Kett asserts that the proper construction of the Group II terms <u>does</u> require a frame of reference for determining the recited spacing. Absent such a frame of reference, the Group II terms are indefinite under 35 U.S.C. §112. As to the second issue, Kett asserts that there is <u>no</u> requirement, either explicit or implicit, that the guide members or fingers have surfaces that are parallel to the side surfaces of the center blade, i.e., the claims are <u>not</u> limited to spacing dimensions that are uniform along the

Defendant Kett Tool Company Inc.'s
Opening Claim Construction Brief          - 10

WOOD, HERRON & EVANS, L.L.P.
2700 Carew Tower · 441 Vine Street
Cincinnati, Ohio  45202-2917
(513) 241-2324 · (513) 241-6234 facsimile

1  length of the fingers or guide members.

2  **a.** **A Proper Claim Construction Requires A**
3  **Frame Of Reference**

4  Similar to the discussion in section D.1 above, Figure 3 of the '303 and '998 patents,

5  reproduced below, identifies the distances or spacings between the first and second fingers,

6  **60a** and **60b** respectively, and the center blade **70** as S1 and S2.



*Fig. 3*

16  Kett's proposed claim construction language which reads in relevant part, ". . . as

17  measured along a line perpendicular to the axis of . . .," is derived first again from Figure 3 of

18  the '303 and '998 patents (Exhibits 1 and 2).  Here, to state the obvious, it is unmistakable

19  that the lines which define "S1" and "S2", the separation or spacing distances are parallel to

20  the axis of the first finger **60a** and the second finger **60b**.  *Id.*  Or said another way, as Figure

21  3 illustrates, the two opposing arrows that define "S1" and "S2" are perpendicular to the axis

22  of the first finger **60a** and the second finger **60b**.  *Id.*

23  The common dictionary definition for "distance" further reinforces Kett's proposed

24  construction.  For example, "distance" is commonly defined as "the degree or amount of

25  separation between two points, lines, surfaces, or objects in geometrical space <u>measured</u>

WOOD, HERRON & EVANS, L.L.P.
2700 Carew Tower · 441 Vine Street
Cincinnati, Ohio  45202-2917
(513) 241-2324 · (513) 241-6234 facsimile

along the shortest path joining them," or as "the length of the perpendicular from a given point to a given line."  (Exhibits 6, 8 and 9 at KETT 06753, 06761, & 06764) (emphasis added).

Accordingly, Kett respectfully submits that the Group II terms must be construed with a frame of reference in the form of the language "as measured along a line perpendicular to the axis of the first and second fingers or guide members." To construe these terms without such a frame of reference for determining the dimension of the separation distance flies in the face of the ordinary understanding for making such a measurement.

### b.  A Proper Claim Construction Does Not Require An Implicit Requirement Of Parallel Surfaces

The specifications of the '303 and '998 patents describe and depict an embodiment of the claimed invention.  Nowhere in the specifications, nor anywhere in the prosecution histories of the patents-in-suit, nor in the reexamination prosecution histories is there a requirement or explanation that calls for the fingers or guide members to have surfaces that are parallel to the side surfaces of the center blade.  Although Figure 3 of the '303 patent shows an embodiment where those surfaces are parallel, there is no limitation in that regard. It is well settled that it is improper to import limitations from the specification into the claims.

> [I]t is improper to import limitations from the specification into the claims where there is no indication that the specific examples in the specification are intended to be strictly coextensive with the claim.

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (*en banc) (quoting Vitronics*, 90 F.3d at 1582); *see also Kinetic Concepts, Inc. v. Blue Sky Med. Group, Inc.*, 554 F.3d

Defendant Kett Tool Company Inc.'s
Opening Claim Construction Brief          - 12 -

WOOD, HERRON & EVANS, L.L.P.
2700 Carew Tower · 441 Vine Street
Cincinnati, Ohio  45202-2917
(513) 241-2324 · (513) 241-6234 facsimile

1010, 1027 (Fed. Cir. 2009).

The portion of the claim construction proposed by Kett "at any given point along that axis," makes it clear that the claim is not limited to a parallel orientation of the respective surfaces. PacTool's proposed construction of the Group II terms, on the other hand, imply there is such a parallel orientation limitation. This is improper under *Phillips*.

In further support of Kett's proposed construction, the '303 patent incorporates by reference U.S. Patent No. 4,173,069. See Exhibit 1 at col. 3, lines 59-61. A copy of the '069 patent is attached as Exhibit 13. Reproduced below is Figure 5 of the '069 patent which shows a tapered center blade. Because the center blade is tapered, by definition the side surfaces of the center blade and the surfaces of the side shear blades are not parallel. Because the '069 patent is incorporated by reference in the '303 patent, it forms a part of the specification of the '303 patent.



| | **Element Identifiers** |
|---|---|
| | 31 – Movable Shear Blade |
| | 32, 33 – Stationary Shear Blades |
| | 41 – Cutting Edges of the Stationary Shear Blades |
| | 43 – Cutting Edge of the Movable Blade |
| | 44 – Flat, Transverse, Upper Face |
| | 45 – Side Cutting Edges |
| | 46 – Tapered Lower Portion |
| | 54, 55 – Downwardly Diverging Inner Faces |
| | 56, 57 – Flat Bottom Faces |

Moreover, in the late 1970's, Kett began working with James Hardie and Coy Pty. Ltd., an Australian company, to produce new shear blades to cut a new product – corrugated and flat cement fiber board. More specifically, the side knives (part no. 91-22) had a 7 degree taper, as shown in the figures below. The lower figure is an excerpt of Exhibit 12, KETT 02691.

WOOD, HERRON & EVANS, L.L.P.
2700 Carew Tower · 441 Vine Street
Cincinnati, Ohio  45202-2917
(513) 241-2324 · (513) 241-6234 facsimile

1
2
3
4
5



6
7
8
9
10



11
12  These prior art shear blades are consistent with the proposed claim construction because they

13  show that it was known in the art, prior to the inventions in the '303 and '998 patents, to have

14  side knives and center blades without parallel facing surfaces.

15  PacTool itself has injected James Hardie into relevance through the Declaration of

16  John T. Whitehead it filed with the USPTO during the reexamination proceedings on the

17  '303 and '998 patents. *See* Exhibit 14 at ¶¶ 4 and 16.  The prior products depicted above,

18  manufactured for James Hardie, are thus relevant to the claim construction analysis and

19  support the conclusion that it is improper to include a parallel orientation limitation in the

20  claim terms at issue.

21

22          **3.      Group III**

23  Terms 14-17 are grouped together because they all present the issue of indefiniteness

24  under 35 U.S.C. § 112.  It should be noted that these terms (and the claims in which they are

25  found) are the partial subject of Kett's pending Motion for Summary Judgment (Dkt. No.

26

Defendant Kett Tool Company Inc.'s
Opening Claim Construction Brief          - 14

WOOD, HERRON & EVANS, L.L.P.
2700 Carew Tower · 441 Vine Street
Cincinnati, Ohio  45202-2917
(513) 241-2324 · (513) 241-6234 facsimile

125) filed December 7, 2010.  Although the Court stayed the briefing and decision on Kett's motion, the indefiniteness analysis in that motion is highly relevant to the current claim construction proceedings, and is reiterated below.  Because claim terms that are indefinite are not capable of construction, Kett has not proffered constructions for the Group III terms.

An indefinite patent claim is invalid.  *See Amgen Inc. v. F. Hoffman-La Roche, Ltd.,* 580 F.3d 1340, 1371 (Fed. Cir. 2009) ("If a claim fails to reasonably apprise one skilled in the art of the boundaries of the claim when read in light of the specification, then the claim is invalid under § 112 for indefiniteness." (citing *Miles Lab., Inc. v. Shandon, Inc.,* 997 F.2d 870, 875 (Fed. Cir. 1993)).  "Section 112(2) provides that '[t]he specification shall conclude with one or more claims [1] particularly pointing out and distinctly claiming the subject matter [2] which the applicant regards as his invention.'"  *Veritas Operating Corp. v. Microsoft Corp.,* Case No. 2:06-cv-703, 2007 U.S. Dist. LEXIS 98739, at * 96 (W.D. Wash. May 25, 2007) (quoting 35 U.S.C. § 112).  Under this provision of the Patent Act, the applicant is required to set forth what the invention is, and "must do so with sufficient particularity and distinctness, *i.e.,* the claim must be sufficiently 'definite.'"  *Id.* (quoting *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1377 (Fed. Cir. 2000)).  A party seeking to invalidate a claim as indefinite under 35 U.S.C. § 112, ¶ 2 must show by clear and convincing evidence that one skilled in the art would not understand the scope of the claim when read in light of the specification.  *Intellectual Prop. Dev., Inc. v. UA-Columbia Cablevision of Westchester, Inc.,* 336 F.3d 1308, 1319 (Fed. Cir. 2003).

Indefiniteness is a question of law for the Court to decide.  *See Honeywell Int'l, Inc. v. United States,* 609 F.3d 1292, 1301 (Fed. Cir. 2010); *see also Exxon Research,* 265 F.3d at 1376 ("We adhere to the principle that 'determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims.'" (quoting *Personalized Media Commun., LLC v. Untied States Int'l Trade Comm'n,* 161 F.3d 695, 705 (Fed. Cir. 1998)).  Both the Federal Circuit and the courts in the Western

WOOD, HERRON & EVANS, L.L.P.
2700 Carew Tower · 441 Vine Street
Cincinnati, Ohio  45202-2917
(513) 241-2324 · (513) 241-6234 facsimile

District of Washington have stated that indefiniteness is "<u>inextricably intertwined with claim</u> <u>construction</u>."  *See e.g., Energizer Holdings v. United States Int'l Trade Comm'n,* 435 F.3d 1366, 1367 (Fed. Cir. 2006) (emphasis added); *Atmel Corp. v. Information Storage Devices,* 198 F.3d 1374, 1379 (Fed. Cir. 1999); *Veritas,* 2007 U.S. Dist. LEXIS, at *97 (W.D. Wash, May 25, 2007); *Omax Corp. v. Flow Int'l Corp.,* Case No. 04-cv-2334, 2006 U.S. Dist. LEXIS 81913, at *11-12 (W.D. Wash. Nov. 7, 2006).  Indeed, if after undertaking claim construction in full, the Court cannot determine the reasonable meaning of a claim term in dispute, then that term is indefinite.  *See Datamize LLC v. Plumtree Inc.,* 417 F.3d 1342, 1347 (Fed. Cir. 2005).

        **a.**    **Claims Containing The Group III Phrases**
                     **"to inhibit premature failure of said motor**
                     **and drive assembly" And "to provide clean**
                     **edge cuts" Are Indefinite**

"A claim is indefinite if its legal scope is not clear enough that a person of ordinary skill in the art could determine whether a particular composition infringes or not."  *Geneva Pharms., Inc. v. GlaxoSmithKline*, *PLC,* 349 f.3d 1373, 1384 (Fed. Cir. 2003) (citing 35 U.S.C. § 112); *see also IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005) (claim must be "sufficiently precise to provide competitors with an accurate determination of the 'metes and bounds' of the protection involved").  Such is the case for claims containing the phrases "inhibit premature failure of said motor and drive assembly" and "to provide clean edge cuts."  The scope of these phrases are neither defined by the language of the specification, nor clear to a person of ordinary skill in the art.

The phrases exist in each of the independent claims of the '303 patent, as they exist after reexamination.  For example:

        8.    [The cutting tool of claim 7] A reciprocating
        fiber cement side cutting tool, comprising:

                * * *

WOOD, HERRON & EVANS, L.L.P.
2700 Carew Tower · 441 Vine Street
Cincinnati, Ohio  45202-2917
(513) 241-2324 · (513) 241-6234 facsimile

1

2

> a reciprocating cutting member between the first and
> second fingers . . .

3

4

5

6

> the second width being less than the first width such
> that the first side surface is spaced apart from the first interior
> surface by 0.0425 to 0.045 inches and the second side surface
> is spaced apart from the second interior surface by 0.0425 to
> 0.045 inches to ***inhibit premature failure of said motor and
> drive assembly and to provide clean edge cuts*** of said fiber-
> cement siding begin cut therebetween, . . .

7

8

9

10

11

12

13

14

15

16

17

(Exhibit 3) (emphasis added).  In addition to claim 8 of the '303 patent, this phrase exists in the language of all remaining independent claims 16, 21 and 25, and therefore in all of the claims depending therefrom.  (*See Id.* at 12-13).  *See Wahpeton Canvas Co. v. Frontier*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989) (noting that by definition dependent claims contain all the limitation of the independent claims from which they depend); *Markman v. Westerview Instr.*, 52 F.3d 967, 1000 (Fed. Cir. 1995) (Newman, J., dissenting) ("An extensive body of law, statutory and judgemade, governs the construction and legal effect of patent claims; for example, that a claim is construed the same way in determining both patent validity and infringement; that a dependent claim includes all of the limitations of the independent claim…").  Accordingly, this indefinite limitation permeates all the claims of the '303 patent, and renders all the claims invalid.

18

19

20

21

22

23

Similar claim language is used in several claims of the '998 patent.  In that patent, claims 7, 10, 13, 16, 19, and 22 include the phrases "to inhibit premature wear of the motor or the drive assembly" and "to provide even edge cuts along a fiber-cement workpiece cut by the cutting blade."  For purposes of the Court's indefiniteness analysis, this phrase is sufficiently similar to the language of the '303 patent for the Court to determine their invalidity together.

24

25

26

Both phrases contain subjective components that render the claims indefinite.  In the '303 patent, the term is "premature failing," while in the '998 patent, the term is "premature

Defendant Kett Tool Company Inc.'s
Opening Claim Construction Brief          - 17 -

WOOD, HERRON & EVANS, L.L.P.
2700 Carew Tower · 441 Vine Street
Cincinnati, Ohio  45202-2917
(513) 241-2324 · (513) 241-6234 facsimile

wear."  The proper construction of each phrase depends upon a subjective reading of the modifier "premature."  Likewise, in the '303 patent, the term used is "clean edge cuts," while in the '998 patent, the term used is "even edge cuts."  Despite the differences, proper construction of each phrase depends on the subjective terms "clean" or "even."  Accordingly, to the extent that the Court deems the claim language of the '303 patent indefinite, the language used in the '998 patent is indefinite for similar reasons discussed below.

The role of the specification in determining indefiniteness was illustrated in *Datamize v. Plumtree*, where the Federal Circuit considered the definiteness of the term "aesthetically pleasing."  The court noted that "when faced with a purely subjective phrase like 'aesthetically pleasing,' a court must determine whether the patent's specification supplies some standard from which to measure the scope of the phrase."  *Datamize*, 417 F.3d at 1351.  In *Datamize,* the patent's specification referenced "aesthetically pleasing" by describing various advantages of the invention over the prior art, including that it "enables the user interface for each individual kiosk to be customized quickly and easily… adhering the… interface to good standards of aesthetics and user friendliness."  *Id. a*t 1351.  Additionally, the specification described that the size of buttons on the screen layout were predefined to a size chosen [] to make them aesthetically pleasing in appearance…" *Id.*  Ultimately, the court held that "aesthetically pleasing" was indefinite because:

> Datamize has offered no objective definition identifying a standard for determining when an interface screen is "aesthetically pleasing."  In the absence of a workable objective standard, "aesthetically pleasing" does not just include a subjective element, it is completely dependent on a person's subjective opinion.

*Id.* at 1350.

The specification of the '303 patent does not illuminate the meaning of a "premature failure" of the drive assembly and motor unit.  The '303 patent suffers from inadequacies similar to those suffered by Datamize.  Although, it does describe "premature failure" in the

Defendant Kett Tool Company Inc.'s
Opening Claim Construction Brief          - 18 -

WOOD, HERRON & EVANS, L.L.P.
2700 Carew Tower · 441 Vine Street
Cincinnati, Ohio  45202-2917
(513) 241-2324 · (513) 241-6234 facsimile

1   prior art as "[o]ne drawback of the original hand-held tool" (Exhibit 1 at col. 2, lines 17-20),

2   the specification fails to provide one of ordinary skill in the art a means to measure when a

3   "failure" would be "premature."  Additionally, the '303 patent describes its solution to the

4   problem, where "the inventors further discovered that increasing the size of the spaces…

5   between the blade… and the fingers… significantly reduced the premature failure of the

6   motor 24 and the drive assembly 36." (*Id.* at col. 5, lines 25-29).  And finally, "the blade set

7   50 of the cutting tool 10 not only provides a cost effective solution for reducing the

8   premature failure of the motor 24 and drive assembly 36, but it also produces a clean edge

9   along the cut." (*Id.* at 51-54).  But ultimately, the specification of the '303 patent provides

10  "no objective definition identifying a standard" one of ordinary skill could use to determine

11  what is meant by "premature failure".

12          Similarly, the specification offers no objective criteria to define a "clean edge cut."

13  The term appears but twice in the specification:  First, "it would be desirable to develop a

14  hand-held cutting tool that cuts a clean edge in FCS and is not subject to premature failure."

15  (Exhibit 1 at col. 2, lines 34-36).  Second, "the blade set 50 of the cutting tool 10 not only

16  provides a cost effective solution for reducing the premature failure of the motor 24 and drive

17  assembly 36, but it also produces a clean edge along the cut." (*Id.* at col. 5, lines 51-54).

18  Like avoiding "premature failure," the patent describes cutting a "clean edge" as an objective

19  of the claimed invention.  However, one of ordinary skill in the art cannot, from the context

20  of the claims and specification, determine what either of those terms means.

21          This fact is illustrated, concisely – yet powerfully – by the deposition testimony of

22  Mr. Scott Fladgard, the named inventor of the '303 patent.  *See Phillips v. AWH*, 415 F.3d

23  1303, 1313 (Fed. Cir. 2005) (stating that it is a "well-settled understanding that inventors are

24  typically persons skilled in the field of the invention and that patents are addressed to an

25  intended to be read by others of skill in the pertinent art.").  Mr. Fladgard testified that he had

26  no idea what was meant by these terms:

WOOD, HERRON & EVANS, L.L.P.
2700 Carew Tower · 441 Vine Street
Cincinnati, Ohio  45202-2917
(513) 241-2324 · (513) 241-6234 facsimile

**Q.**   Okay. And just after that second range is recited, it says, "to inhibit premature failure of said motor and drive assembly and to provide clean edge cuts of said fiber-cement siding being cut therebetween."  Do you see that?

**A.**   Yes.

**Q.**   So how is one to – to determine that premature failure of said motor and drive assembly has been inhibited?

                                    ***

**A.**   Give me the question again.

**Q.**   How is one to determine whether premature failure of said motor and drive assembly has been inhibited or not?

                                    ***

**A.**   Subjective.

**Q.**   Okay.  And then how about "and to provide clean edge cuts of said fiber-cement siding cut therebetween"? What is the standard that's applied to determine whether that gap width provides clean edge cuts?

                                    ***

**A.**   And again, that's a subjective, as we talked about before: What's a clean edge?

**Q.**   Something might be clean to one person and not to somebody else?

**A.**   Exactly.

(Scott Fladgard Dep. Tr. 118:9 – 119:12, previously filed with Dkt. 113-1, Ex. 3 to Davis Decl.).  The terms "premature failing" and "clean edge cut," by their nature, are subjective. What is meant by premature can only be understood by an objective understanding of when something – such as the failing of the motor and drive assembly – will or should likely happen.  Likewise, whether a cut is a clean edge cut is based on an opinion.  These terms

Defendant Kett Tool Company Inc.'s
Opening Claim Construction Brief            - 20

WOOD, HERRON & EVANS, L.L.P.
2700 Carew Tower · 441 Vine Street
Cincinnati, Ohio  45202-2917
(513) 241-2324 · (513) 241-6234 facsimile

1   remain subjective without further description, discussion or definition. According to the

2   Federal Circuit in *Datamize*, that is where the specification must be used to determine

3   whether the construction of a purportedly indefinite term can be ascertained. As described

4   above, the '303 patent's specification provides one of ordinary skill in the art no further

5   guidance regarding the meaning of "premature failing" and "clean edge cut." Even the

6   named inventor cannot understand their meaning.

7       Accordingly, the Court should determine that the phrases "to inhibit premature failure

8   of said motor and drive assembly" and "to provide clean edge cuts" are indefinite, and

9   therefore, invalid.

10          **b.     Claims Containing The Phrase "wherein the**
                    **first side spacing and the second side spacing**
11                  **are from [a certain percentage] of a thickness**
                    **of a fiber cement workpiece" Are Indefinite**
12

13       "When a proposed construction requires that an artisan make a separate infringement

14   determination for every set of circumstances in which the [device] may be used, and when

15   such determinations are likely to result in differing outcomes (sometimes infringing and

16   sometimes not), that construction is likely to be indefinite." *Halliburton Energy Services,*

17   *Inc. v. M-I LLC,* 514 f.3d 1244, 1255 (Fed. Cir. 2008). The claims of the '998 patent reciting

18   that the first side spacing and the second side spacing are of a certain percentage of the

19   "thickness of a fiber-cement workpiece to be cut with the blade" require such a determination

20   from an artisan. Essentially, an artisan in the field must determine the ratio of the first and

21   second side spacing to the thickness of the fiber cement to determine whether his actions

22   constitute infringement.

23       This phrase generally exists in each of independent claim 2, 10, and 19 of the '998

24   patent, as they exist after reexamination. For example:

25              2.     The method of cutting a fiber-cement workpiece
                       having a thickness of 0.025 inch, comprising:
26

* * *

> reciprocating a cutting blade between the first and second guide members and along a path transverse to the surface of the workpiece… ***wherein the first side spacing and the second side spacing are approximately 17% to 18% of a thickness of a fiber-cement workpiece;***…

(Exhibit 4 at col. 2, lines 12-15) (emphasis added).  Because this limitation is contained in independent claims, it is by law included into the dependent claim thereof.  *See Wahpeton Canvas,* 870 F.2d at 1552 n.9 (noting that by definition, dependent claims contain all the limitation of the independent claims from which they depend); *Markman,* 52 F.3d at 1000 ("An extensive body of law, statutory and judgemade, governs the construction and legal effect of patent claims; for example, that a claim is construed the same way in determining both patent validity and infringement; that a dependent claim includes all of the limitations of the independent claim…").

In *Halliburton Energy Svs., Inc. v. M-I, LLC,* the Federal Circuit found claims such as those employed by PacTool invalid due to indefiniteness.  *Halliburton Energy*, 514 F.3d at 1255.  In this case, the court undertook the construction of "fragile gels" as used in a claim reciting "a method for conducting a drilling operation in a subterranean formation using a fragile gel drilling fluid." *Id.* at 1246.  The specification defined "fragile gels" in a number of ways, including: "easily disrupted or thinned, and that liquefies or becomes less gel-like and more liquid – like under stress…" *Id.*  Among other considerations, the court found Halliburton's claim indefinite because it failed to define the scope of the fragility of the gel in light of all the variables that go into the characteristics of the gels.  *Id.* at 1253.  Moreover, the court found that "an artisan would not know from one [oil] well to the next whether a certain drilling fluid was within the scope of the claims …"  and therefore infringed.  *Id.* at 1254.  *See also Geneva Pharms, Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1384 (Fed. Cir. 2003) (determining that it is "the epitome of indefiniteness" that "a given embodiment

Defendant Kett Tool Company Inc.'s
Opening Claim Construction Brief            - 22 -

WOOD, HERRON & EVANS, L.L.P.
2700 Carew Tower · 441 Vine Street
Cincinnati, Ohio  45202-2917
(513) 241-2324 · (513) 241-6234 facsimile

1   would simultaneously infringe and not infringe the claims, depending on the particular

2   bacteria chose for analysis.").

3         PacTool's claims are similarly indefinite.  To determine whether a particular device

4   or use of a device infringes the claims of the '998 patent identified above requires the artisan

5   to make a repeated series of calculations of the percentage of the first and second side

6   spacing with respect to the thickness of the workpiece he is currently dealing with.  In other

7   words, to determine whether a particular tool would arguably infringe these claims, you

8   would have to first know the thickness of the particular workpiece in question.  For one, or

9   many thicknesses, the tool would not infringe, but the artisan in the field would not know

10  (before calculating) from one piece of fiber-cement to the next whether the device he was

11  using was within the scope of the claims; his same hand-held cutting tool would

12  simultaneously infringe or not infringe, depending on the size of the workpiece.  This is the

13  "epitome of indefiniteness," and as such, these claims are indefinite and invalid.

14  **IV.**    **CONCLUSION**

15        For all the foregoing reasons, Kett respectfully request that the Court adopt the

16  constructions proposed by Kett as set out in Exhibit 5.

17

18

19

20

21

22

23

24

25

26

Defendant Kett Tool Company Inc.'s
Opening Claim Construction Brief          - 23

WOOD, HERRON & EVANS, L.L.P.
2700 Carew Tower · 441 Vine Street
Cincinnati, Ohio  45202-2917
(513) 241-2324 · (513) 241-6234 facsimile

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

/s/ John Paul Davis

Gregory F. Ahrens, OH Bar No. 0038627
Admitted *Pro Hac Vice*
John Paul Davis, OH Bar No. 0073446
Admitted *Pro Hac Vice*
WOOD, HERRON & EVANS, L.L.P.
2700 Carew Tower
441 Vine Street
Cincinnati, Ohio  45202-2917
(513) 241-2324
Facsimile: (513) 241-6234
jdavis@whepatent.com
gahrens@whepatent.com

Attorneys for Defendant Kett Tool
Company Inc.

Paul Richard Brown, WSBA No. 19357
BERESFORD BOOTH PLLC
145 Third Ave. S, Suite 200
Edmonds, Washington  98020
(425) 776-4100
Facsimile: (425) 776-1700
paulb@beresfordlaw.com

Local Counsel for Defendant Kett Tool
Company Inc.

WOOD, HERRON & EVANS, L.L.P.
2700 Carew Tower · 441 Vine Street
Cincinnati, Ohio  45202-2917
(513) 241-2324 · (513) 241-6234 facsimile

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on March 4, 2011, I electronically filed the foregoing with the

3   Clerk of the Court using the CM/ECF system which will send notification of such filing to

4   the following:

5                          Paul T. Meiklejohn, Esq.
                           Ryan B. Meyer, Esq.
6                          DORSEY & WHITNEY LLP
                           1420 Fifth Ave., Suite 3400
7                          Seattle, Washington  98101
                           meiklejohn.paul@dorsey.com
8                          meyer.ryan @dorsey.com

9                  Attorneys for Plaintiff PacTool International, Ltd.

10

11                         Arthur H. Schlemmer, Esq.
                   BARRON PECK BENNIE & SCHLEMMER
12                         3074 Madison Road
                           Cincinnati, Ohio 45209
13                         ahs@bpbslaw.com

14                         Ronald James Trompeter, Esq.
                           HACKETT BEECHER & HART
15                         1601 Fifth Avenue
                           Suite 2200
16                         Seattle, Washington  98101-1625
                           rtrompeter@hackettbeecher.com
17

18      Attorneys for Elizabeth Tu Hoffman, Executor of the Estate of H. Rowe Hoffman

19

20          Dated this 4th day of March, 2011.

21                                            /s/ John Paul Davis
                                              Gregory F. Ahrens, OH Bar No. 0038627
22                                            Admitted *Pro Hac Vice*
                                              John Paul Davis, OH Bar No. 0073446
23                                            Admitted *Pro Hac Vice*
                                              WOOD, HERRON & EVANS, L.L.P.
24
                                              Attorneys for Defendant Kett Tool
25                                            Company, Inc.

26

WOOD, HERRON & EVANS, L.L.P.
2700 Carew Tower · 441 Vine Street
Cincinnati, Ohio  45202-2917
(513) 241-2324 · (513) 241-6234 facsimile