UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PACTOOL INTERNATIONAL LTD, a Washington Corporation,<br><br>Plaintiff,<br><br>v.<br><br>KETT TOOL COMPANY, INC., an Ohio Corporation, et al.,<br><br>Defendants. | CASE NO. C06-5367BHS<br><br>CLAIM CONSTRUCTION ORDER |

This matter comes before the Court pursuant to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), to construe the disputed claim terms of U.S. Patent No. 5,993,303 ("'303 Patent") and U.S. Patent No. 6,250,998 ("'998 Patent"), along with their respective Reexamination Certificates, 5,993,303 C1 ("'303 C1 Certificate") and 6,250,998 C1 ("'998 C1 Certificate"). The Court has reviewed the parties' opening and responsive briefs, heard oral argument of counsel, and considered the remainder of the file and hereby construes the claim terms at issue as stated herein.

**I. PROCEDURAL HISTORY**

On April 8, 2010, Plaintiff PacTool International LTD ("PacTool") filed a complaint against Defendants Kett Tool Company, Inc. ("Kett") and H. Rowe Hoffman alleging infringement of the '303 Patent and '998 Patent. Dkt. 63.

On March 4, 2011, Kett filed a claim construction brief (Dkt. 170) and PacTool filed a claim construction brief (Dkt. 172). On March 18, 2011, Kett responded (Dkt. 188) and PacTool responded (Dkt. 189).

## II. PATENTS

The '303 Patent, '303 C1 Certificate, and the '998 C1 Certificate are titled "Hand-Held Cutting Tool for Cutting Fiber Cement Siding" and the '998 Patent is titled "Hand-Held Cutting Tool for Cutting Fiber." The claims at issue are claims 2, 3, 4, 8, 11, 12, 16, 21, 23, 24 and 25 of the '303 patent, as amended during reexamination, and claims 1-2 (as amended during reexamination), 3, 7 (as amended during reexamination), 10, 12, 13, 15, 16, 18, 19, 21, 22 and 24 of the '998 patent. Dkt. 164, Exh. A.

## III. DISCUSSION

### A. Motion to Strike

During oral argument, Pactool made a motion to strike the Declaration of Nicholas C. Tarkany (Dkt. 191). The Court has reviewed the report and for reasons that are apparent in this order, does not accept Mr. Tarkany's opinions regarding the invalidity of the patents and the inability to determine an objective standard for the words of degree limitations. Therefore, it is unnecessary to strike the declaration and the Court will specifically set forth the evidence that it relies upon in rendering this decision. The motion is denied.

### B. Legal Standard

It is the obligation of the court to construe as a matter of law the meaning of language used in a patent claim. *Markman*, 52 F.3d at 979. In construing a patent's claim terms, a court must consider the intrinsic evidence in the record. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). Intrinsic evidence includes the ordinary and customary meaning of the claim terms, the specification of the patent, and the patent's prosecution history. *Id*.

The ordinary and customary meaning of a term is defined by a person of ordinary skill in the art at the time of the invention. *Id*. The context in which a term is used can be "highly instructive" in resolving the meaning of the term. *Id*. at 1314. For

ORDER - 2

example, if a claim has the term "steel baffle," it strongly implies that the term "baffle" does not inherently include objects made of steel. *Id*. Other claims in a patent may also provide valuable contextual cues for deciphering the meaning of a term. *Id*. If a limitation is present in a dependent claim, then there is a presumption that the limitation is not present in the parent claim. *Id*. at 1314-15.

The claims must also be read in light of the specification. *See Markman*, 52 F.3d at 979. The specification is always highly relevant to the meaning of a claim term: "Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). If the specification reveals a definition of a claim term that is different from how that term would otherwise be used, then "the inventor's lexicography governs." *See Phillips*, 415 F.3d at 1316. The court should take care, however, not to import limitations from the specification into the claims. *Id*. at 1323. For example, even if the specification describes very specific embodiments, the claim terms should not be confined to those embodiments. *Id*.

The prosecution history of a patent is the last piece of intrinsic evidence that a court should consider when construing the claims of the patent. *Id*. at 1317. The prosecution history provides evidence of how the U.S. Patent and Trademark Office ("PTO") and the inventor understood the patent. *Id*. A court, however, should be aware that the prosecution history represents the ongoing negotiation between the PTO and the applicant, rather than the final product. *Id*. As such, the prosecution history may lack the clarity of the specification and may not be as useful for claim construction purposes. *Id*. In certain instances, however, the prosecution history may provide guidance of an applicant's intent to specifically limit the scope of a given claim term. *Id*.

ORDER - 3

Extrinsic evidence is the last category of evidence a court may consider when construing patent claims. *Id.* Such extrinsic evidence includes expert and inventor testimony, dictionaries, and learned treatises. *Id.* On its own, extrinsic evidence is unlikely to be reliable in guiding the court's claim construction. *Id.* at 1319. Instead, extrinsic evidence should be considered in the context of the intrinsic evidence. *Id.* A court may also use extrinsic evidence to determine how a person of ordinary skill in the art would understand the claimed invention. *Id.*

Under 35 U.S.C. § 112, claims must "particularly point[ ] out and distinctly claim[ ] the subject matter which the applicant regards as his invention." The Patent Act "requires that the scope of the claims be sufficiently definite to inform the public of the bounds of the protected invention, i.e., what subject matter is covered by the exclusive rights of the patent." *Halliburton Energy Svcs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008). "Only claims 'not amenable to construction' or 'insolubly ambiguous' are indefinite." *Id.* at 1250 (citations omitted). The *Halliburton* court also stated that:

> Proof of indefiniteness requires such an exacting standard because claim construction often poses a difficult task over which expert witnesses, trial courts, and even the judges of this court may disagree. Nevertheless, this standard is met where an accused infringer shows by clear and convincing evidence that a skilled artisan could not discern the boundaries of the claim based on the claim language, the specification, and the prosecution history, as well as her knowledge of the relevant art area.

*Id.* at 1249-50 (citations and quotations omitted).

With these standards and rules in mind, the Court turns to the disputed terms of the patents in question.

**C.     Disputed Terms**

**1.     "gap"**

Claims 1-2 (as amended during reexamination), 7 (as amended during reexamination), 10, 16, and 19 of the '998 Patent contain the term "gap." PacTool proposes that the Court should construe this term as "the space between the inner surfaces

ORDER - 4

of the side knives." Dkt. 172 at 17-19. Kett argues that PacTool's construction renders the term indefinite because it fails to provide a frame of reference. Dkt. 170 at 7-8. Thus, Kett proposes that the Court construe the term as "the degree or amount of separation between the first and second interior surfaces, as measured along a line perpendicular to the axis of the first and second fingers or guide members." *Id*.

The intrinsic evidence does not support the "axis" limitation in Kett's proposed construction. While the figures included in the patent show separation between two objects, there is no reference to the objects having a defined axis or the orientation of such an axis. In fact, the claims disclose objects with surfaces that are oriented in certain configurations, such as "in a common plane" or "juxtaposed" to one another. *See, e.g.*, '998 C1 Certificate, 1:30 ("common plane"), 2:31 ("juxtaposed"). The extrinsic evidence is also of no support to Kett as gap carries the ordinary meaning of "a separation in space." Dkt. 170, Exh. 6. Therefore, the Court declines to adopt Kett's proposed construction of the term "gap."[1]

PacTool's construction is confusing in that it proposes that the term "guide members" be construed as "side knives." PacTool provides no explanation for this terminology of the members of the "guide assembly." In fact, during oral argument, counsel for Pactool conceded that the terms referred to the same objects and were "interchangeable." The Court finds that there is no need to create additional confusion in this matter by adopting interchangeable terms.

With regard to PacTool's proposed construction that gap include "between the inner surfaces," substituting this phrase into any claim seems redundant. For example, claim 1 would provide, in part, as follows: "the first guide member having a first interior surface and the second guide member having a second interior surface spaced apart from

---

[1] *See* Section 3.a, *infra*, for a further consideration of Kett's indefiniteness argument.

ORDER - 5

the first interior surface by [a space between the inner surfaces] . . . ." PacTool has failed to show that a person of ordinary skill in the art would consider the ordinary and customary meaning of the word "gap" to redefine the members of the guide assembly as "side knives" or read a particular claim to mean that the objects are spaced apart by a space between the objects. Therefore, the Court declines to adopt PacTool's proposed construction.

The Court finds that a person of ordinary skill in the art would construe the term "gap" as it is ordinarily and customarily defined. Therefore, the Court construes the term gap as "a separation in space."

### 2. "gap distance"

Claims 8, 16, 21, and 25 of the '303 Patent, as amended during reexamination, and claims 3, 13, and 22 of the '998 Patent contain the term "gap distance." Kett proposes that the Court construe the term to mean "the degree or amount of separation between the first and second interior surfaces, as measured along a line perpendicular to the axis of the first and second fingers or guide members." Dkt. 170 at 8-10. PacTool proposes that the Court construe the terms to mean "the distance between the inner surfaces of the side knives." Dkt. 172 at 19-20.

For the reasons set forth above, the Court declines to adopt (1) the portion of Kett's construction that inserts an "axis" frame of reference limitation and (2) PacTool's proposed construction. With regard to the term "distance," Kett proposes that the Court should construe the term with its ordinary and customary meaning, "'the degree or amount of separation between' something." Dkt. 170 at 9. The Court agrees with Kett because the intrinsic evidence supports the combination of the Court's construction of "gap" with the ordinary and customary meaning of "distance." For example, inserting these constructions into claim 8 of the '303 Patent would provide in part as follows: "the first and second interior surfaces being spaced apart from one another by a [degree or

ORDER - 6

amount of separation in space] . . . ." The claim then subsequently limits that "degree or amount of separation in space" by a measured amount ('303 C1 Certificate, 2:6-8) or, as in claim 21, a proportionate amount (*id*., 3:17). Therefore, the Court construes the term "gap distance" to mean "degree or amount of separation in space."

### 3. Terms Regarding Spacing Distance

The parties dispute the construction of numerous claim terms that provide limitations on the spacing distances between the guide members and the center blade. *See* Dkt. 164-1 at 13-60. For example, the parties dispute the construction of a portion of claim 8 of the '303 patent, which provides as follows:

> such that the first side surface is spaced apart from the first interior surface by 0.0425 to 0.045 inches and the second side surface is spaced apart from the second interior surface by 0.0425 to 0.045 inches . . . .

'303 C1 Certificate, 3:4-8. Kett argues that these terms (1) require a limitation for a frame of reference to determine the disclosed spacings and (2) do not include a limitation that the spacing be uniform along the length of the members of the tool. Dkt. 170 at 10-14.

#### a. Frame of Reference

Kett argues that the claim terms regarding spacing distance should include a limitation where the spacing between objects is "measured along a line perpendicular to the axis of the" other object. Dkt. 170 at 11-12. While the Court agrees with Kett that there must be some reference to determine the disclosed spacings, the claims, as well as the specifications, specifically refer to "surfaces" of the guide members, fingers, and cutting member. Moreover, the Court has concluded that there is no support for the limitation of a distance measured along a "line perpendicular to the axis" of a particular object. Therefore, the Court declines to adopt Kett's proposed construction of the disputed terms, which includes the "axis" frame of reference.

PacTool's proposed construction sets the frame of reference as the surfaces themselves, which is consistent with the intrinsic evidence. For example, claim 8 of the '303 Patent states that "[one] surface is spaced apart from the [other] surface . . . ." '303 C1 Certificate 2:4-5. Moreover, the specifications repeatedly refer to spacings between surfaces. *See, e.g.*, '998 Patent, 4:31-49. PacTool, however, proposes that the terms guide members and fingers be construed to mean side knives. The Court has already rejected the interchangeable term construction and, therefore, the Court declines to adopt PacTool's proposed construction.

The parties mainly dispute the frame of reference for the spacing measurements or proportions. After declining to adopt Kett's "axis" limitation, the Court finds that a person of ordinary skill in the art would understand that, based on the claim language and specifications, the proper frames of references are the disclosed "surfaces." Therefore, the Court need not construe these disputed terms to mean anything other than their ordinary and customary meaning.

        **b.**    **Uniform Spacing**

Kett argues that there is no evidence "that calls for the fingers or guide members to have surfaces that are parallel to the side surfaces of the center blade." Dkt. 170 at 12. The Court agrees that neither patent contains explicit language that specifically requires the orientation of the surfaces to be "parallel." The claims and specifications, however, disclose surfaces that are "spaced apart" from one another by a single, given measurement and the top plan views included in the patents clearly depict uniform distances between these surfaces. The Court finds that a person of ordinary skill in the art would understand that two surfaces are parallel when the surfaces, or geometric planes, are oriented relative to one another by a single given measurement. Taking into consideration that practicing the invention requires the surfaces to move relative to one another, it appears that the only way to maintain consistent spacing would be to limit the surfaces to essentially parallel

orientations. Therefore, the Court will construe these terms to include a limitation that the "spacing distances are applied to surfaces that are oriented parallel to one another."

During oral argument, Kett argued that the patents also fail to explicitly direct how the given measurement should be made. For example, the measurement along a line that is not perpendicular to two parallel surfaces will always be longer than the measurement along a line that is perpendicular to two parallel surfaces. The Court finds that, in light of the specifications and provided figures, one of ordinary skill in the art would understand that the spacings would be measured along a line that is perpendicular to the parallel surfaces. Otherwise, the measurement would not be uniform, would be dependant upon the angle of intersection, and could theoretically range from the disclosed spacing to infinity. Therefore, the Court will also construe these terms to include a limitation that the "spacing distances are measured along a line perpendicular to the parallel surfaces."

**4.   Words of Degree**

The "scope of claim language cannot depend solely on the unrestrained, subjective opinion of a particular individual purportedly practicing the invention." *Datamize, LLC v. Plumtree Software, Inc.,* 417 F.3d 1342, 1350-51 (Fed. Cir. 2005) (citation omitted). "When a word of degree is used the district court must determine whether the patent's specification provides some standard for measuring that degree." *Seattle Box Co., Inc. v. Industrial Crating & Packing, Inc.*, 731 F.2d 818, 826 (Fed. Cir. 1984). Moreover, "even if [an individual] needed to experiment so as to determine the limits of [the patent's] claims, the claims would not be invalid under section 112." *Id*. The burden of persuasion lies with the party challenging the validity of the patent. *Id*.

**a.   "premature failure" and "premature wear"**

Claims 8, 16, 21, and 25 of the '303 patent, as amended during reexamination, contain the term "premature failure." Claims 7 (as amended during reexamination), 10, 13, 16, 19, and 22 of the '998 patent contain the term "premature wear."

ORDER - 9

Kett argues that the claims are indefinite because the terms "premature failure" and "premature wear" are subjective in that they are "neither defined by the language of the specification, nor clear to a person of ordinary skill in the art." Dkt. 170 at 16. PacTool argues that both patents' specifications "refer to the fact that PacTool's prior art shears were subject to premature failure of the motor and drive assembly." Dkt. 172 at 9. Both patents provide that "[o]ne drawback of the original hand-held tool . . . was that the drive assembly and the motor-unit were subject to premature failure." '303 Patent, 2:17-19 & '998 Patent 2:25-27. The patents further provide that "the motor-unit was a 1046-90 Black and Decker® electric drill motor, and the drive assembly was a shear head manufactured by Kett Tool Co. of Cincinnati, Ohio." '303 Patent, 1:63-66 & '998 Patent 2:4-7

The patent is entitled to the presumption of validity, which encompasses the determination that one of skill in the art, possibly through experimentation, could determine an expected failure or wear of the parts disclosed in the patents or other prior art.[2] Then, with no intrinsic evidence showing a special or unusual meaning of "premature," one of ordinary skill in the art would construe the word with its ordinary and customary meaning, which is "happening, arriving, existing, or performed before the proper or usual time." Dkt. 172-7, Declaration of Ryan Meyer, Exh 11 at 6. In combination, an expected failure or wear rate and the meaning of "premature" provides an objective standard for the terms in question.

Kett has presented persuasive evidence that one of ordinary skill in the art would consider the term "premature failure" to be subjective. For example, the named inventor of the '303 Patent stated in his deposition that determining premature failure would be

---

[2] The Court notes that, during oral argument, Kett claimed that the patent examiner required the functional limitations that included the words of degree that are now contested. Although this fact is not dispositive of the issue, this fact is persuasive evidence that the patent examiner concluded that an objective standard existed for the claim terms.

ORDER - 10

subjective. Dkt. 113-1, Declaration of John Davis, Ex. 3. The Federal Circuit, however, has stated that "it is not unusual for there to be a significant difference between what an inventor thinks his patented invention is and what the ultimate scope of the claims is after allowance by the PTO." *Markman*, 52 F.3d at 983. The burden is on Kett, and the Court finds that Kett has failed to submit clear and convincing evidence that these terms rely "solely on the unrestrained, subjective opinion of a particular individual purportedly practicing the invention." *Datamize*, 417 F.3d at 1350-51. Therefore, the Court does not hold that these claims are indefinite.

### b. "to provide clean edge cuts" and "to provide even edge cuts"

Claims 8, 16, 21, and 25 of the '303 patent, as amended during reexamination contain the phrase "to provide clean edge cuts of said fiber-cement siding being cut therebetween . . . ." Claims 7 (as amended during reexamination), 13, 16, and 22 of the '998 patent contain the phrase "to provide even edge cuts along a fiber-cement workpiece . . .," and claims 10 and 19 contain the phrase "to provide even edge cuts along the fiber-cement workpiece . . . ."

Kett argues that the claims are indefinite because the term "to provide clean edge cuts" is subjective in that it is "neither defined by the language of the specification, nor clear to a person of ordinary skill in the art." Dkt. 170 at 16. The specifications, however, provide that fiber-cement siding "tends to rip or crack along unpredictable lines when it is cut with a thin blade . . ." ('303 Patent, 5:43-44; '998 Patent, 5:49-50), and that the present invention "produces a clean, straight edge along the cut." ('303 Patent, 5:42-43; '998 Patent, 5:48-49). Each patent is entitled to the presumption that these disclosures provide an objective standard to a person of ordinary skill in the art. Kett has failed to submit clear and convincing evidence to overcome these presumptions. Therefore, the Court does not hold that these claims are indefinite.

ORDER - 11

### 5. "thickness of a fiber-cement workpiece"

Claim 25 of the '303 Patent, as amended during reexamination, and claims 2 (as amended during reexamination), 10, and 19 of the '998 patent contain terms that require spacing based on a proportion of the thickness of the fiber-cement workpiece. For example, claim 10 of the '998 patent provides in part as follows: "wherein the first side spacing and the second side spacing are from 13% to 22% of a thickness of a fiber-cement workpiece to be cut with the blade." '998 Patent, 8:15-18.

"A claim is indefinite if its legal scope is not clear enough that a person of ordinary skill in the art could determine whether a particular composition infringes or not." *Geneva Pharmaceuticals, Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1374 (Fed. Cir. 2003) (construing term "synergistically effective amount"). Moreover,

> [w]hen a proposed construction requires that an artisan make a separate infringement determination for every set of circumstances in which the composition may be used, and when such determinations are likely to result in differing outcomes (sometimes infringing and sometimes not), that construction is likely to be indefinite.

*Halliburton*, 514 F.3d at 1255 (construing term "fragile gels"). The Federal Circuit, however, has held that "[a]s long as those of ordinary skill in the art realized that the dimensions could be easily obtained, § 112, 2d ¶ requires nothing more." *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1576 (Fed. Cir. 1986) (construing term "so dimensioned"). "The phrase 'so dimensioned' is as accurate as the subject matter permits, automobiles being of various sizes." *Id*.

In this case, Kett argues that the disputed term is indefinite because a skilled artisan would have to make a separate infringement calculation for every thickness of fiber-cement siding upon which a cutting tool may be used. Dkt. 170 at 21-23. The Court finds that, with simple arithmetic, a person of ordinary skill in the art could determine whether the tool being used infringed the claims in question. With fiber-cement siding being of various thicknesses, the proportionate amount of those thicknesses

may be easily obtained and applied to the spacings of the tool.  Therefore, the Court does not hold that these claim are indefinite.

### 6. "approximately"

During oral argument, Kett raised an issue that the use of the term "approximately" rendered the claims invalid for indefiniteness.  For example, claim 2 of '998 C1 provides that "the first side spacing and the second side spacing are approximately 17% to 18% of a thickness of the fiber-cement workpiece." *Id*. 2:13-16.  The Federal Circuit has held that the use of the terms "about" or "approximately" does not render a claim indefinite. *Ortho-McNeil Pharmaceutical, Inc. v. Caraco Pharmaceutical Laboratories, Ltd.*, 476 F.3d 1321, 1326-1328 (Fed. Cir. 2007).  In fact, the court approved the district court's construction of the term "about 1:5" to mean "approximately 1:5, encompassing a range of ratios no greater than 1:3.6 to 1:7.1." *Id*.

In this case, the Court does not find that Pactool's use of the term approximately renders any claim indefinite.  While a range of acceptable measurements may be an appropriate limitation, neither party has briefed the issue and the Court will not *sua sponte* impose such a limitation.  The Court does note that the spacing ranges were narrowed during reexamination, which would provide some guidance to one of ordinary skill in the art.  In any event, the Court concludes that the claims are not indefinite.

## IV.  ORDER

Therefore, it is hereby **ORDERED** that the disputed claim terms of the '303 Patent and the '998 Patent are construed as stated herein.

DATED this 27th day of October, 2011.

BENJAMIN H. SETTLE
United States District Judge