UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PACTOOL INTERNATIONAL, LTD.,

    Plaintiff,

v.

KETT TOOL COMPANY, INC., et al.,

    Defendants.

CASE NO. C06-5367 BHS

ORDER GRANTING DEFENDANT'S MOTION TO EXCLUDE AND DENYING PLAINTIFF'S MOTION TO STRIKE

This matter comes before the Court on Defendant Kett Tool Company, Inc.'s ("Kett") motion to exclude the expert opinion of R. Lee Rawls ("Rawls") (Dkt. 340) and Plaintiff PacTool International, Ltd.'s ("PacTool") motion to strike (Dkt. 356). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion to exclude and denies the motion to strike for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On June 29, 2006, PacTool filed a complaint against Kett alleging patent infringement. Dkt. 1. On April 8, 2010, PacTool filed a First Amended Complaint ("FAC") against Defendants Kett and H. Rowe Hoffman alleging infringement of U.S.

ORDER - 1

Patent No. 5,993,303 and U.S. Patent No. 6,250,998, along with their respective Reexamination Certificates, 5,993,303 C1 and 6,250,998 C1 ("Patents"). Dkt. 63.

On October 27, 2011, the Court issued an order construing the claims of the Patents. Dkt. 263. Relevant to the instant motion, the Court construed certain terms in the Patents as "words of degree" and concluded that the Patents' specifications disclosed sufficient information so that a person of ordinary skill in the art would be able to determine an objective standard for each word of degree. *Id*. at 9–11.

On October 28, 2011, the Court denied PacTool's motion for summary judgment of literal infringement because PacTool had failed to submit evidence on every element of its claim for literal infringement, namely there was no evidence that Kett's tools fell within the "words of degree" limitations. Dkt. 265 at 3–4.

In February of 2012, PacTool produced a supplemental report of Rawls dated February 13, 2012. Dkt. 310–6 ("Report"). The Report provides as follows:

> The following is the written report as to whether the terms "premature wear" and "premature failure" in the claims of United States Patent No. 6,250,998 C1 (the '998 Patent) and U.S. Patent No. 5,993,303 C1 (the '303 patent) are met by the accused Kett products and Malco products identified by Kett.

*Id*. at 3.

On June 28, 2012, Kett filed the instant motion to exclude the Report and related testimony. Dkt. 340. On July 16, 2012, PacTool responded. Dkt. 344. On July 20, 2012, Kett replied. Dkt. 354. On July 25, 2012, PacTool filed a surreply requesting that the Court strike certain material contained in and submitted with Kett's response. Dkt. 356.

On August 9, 2012, the Court, instead of granting PacTool's motion to strike, requested that PacTool submit a response to Kett's reply brief and evidence submitted in support thereof.[1]  Dkt. 360.  On August 16, 2012, PacTool responded.  Dkt. 367.

## II. FACTUAL BACKGROUND

The Patents claim a blade configuration that is set to "inhibit premature wear" and/or "premature failure" of the tool's motor and/or drive assembly.  *See, e.g.*, '303 Patent, col. 6, ll. 42–44, and '998 Patent, col. 8, ll. 17–18.  Mr. Rawls provides that

> Simply put, the claim language means that shears that embody the claimed elements will wear more slowly and/or last longer than the prior art shears that do not embody the claimed elements.

Report at 6.  Mr. Rawls states that PacTool undertook a study to "test the relative durability of like devices with and without the [blade] structure claimed in the '998 and '303 patents."  *Id*.  The study, however, was not designed to produce actual failure of any shear device.[2]  Instead, Mr. Rawls states that

> this testing was designed to measure the relative stress on the tools, rather than to measure wear or count failures for comparison. My theory is that, everything else being equal, wear and failure rates are directly related to internal loads and stress on the components; the higher the stress, the higher the wear/failure rate will be. On average, the higher stressed tool will wear and fail more than the lower stressed tool.

*Id*. at 7.

---

[1] Therefore, PacTool is not prejudiced by the additional evidence and the Court denies the motion to strike.

[2] It seems that without evidence of an actual failure of a tool's motor or drive assembly, the most the test can show is that the tools with the claimed blade configuration are easier to use after a certain amount of use.

After significant testing on multiple shears, Mr. Rawls concluded that the patented gap spacing inhibited premature wear and failure. Specifically, Mr. Rawls concluded that:

> The testing discussed above has demonstrated that the novel features disclosed and claimed in the '998 and '303 patents result in significantly less stress within the shear than the stress found in prior art devices (thick bladed tools). Less stress on electro/mechanical components will translate into fewer failures of those components. The reduced stress observed with both the thin bladed and second design tools compared to the thick bladed tools will result in fewer failures over time. . . .
> From this testing I can conclude that the premature wear/failure claim terms are met by Kett fiber-cement first and second design shears in which the structure claimed in the '998 and '303 patents is embodied, but are not met in the prior art and Malco shears.

*Id*. at 22–23.

## III. DISCUSSION

Expert testimony is admissible if it is "scientific, technical, or other specialized knowledge" that "will help the trier of fact to understand the evidence or to determine a fact in issue," and "the testimony is based on sufficient facts or data . . . the testimony is the product of reliable principles and methods; and the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The court acts as a gatekeeper to ensure that expert testimony "is both relevant and reliable." *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 836 (9th Cir. 2011). The court may apply four nonexclusive factors to determine whether proffered expert opinion is developed by the scientific method or is "junk science:"

> District court judges are to consider not only (1) whether the method has gained general acceptance in the relevant scientific community, but also (2) whether the method has been peer-reviewed, (3) whether the method "can

ORDER - 4

>be (and has been) tested," and (4) whether there is a "known or potential rate of error." [*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 594 (1993)] . . . . [T]he Daubert inquiry is flexible . . . . "One very significant fact" is whether the expert has "developed [his] opinions expressly for purposes of testifying," since "a scientist's normal workplace is the lab or the field, not the courtroom or the lawyer's office." [*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1317 (9th Cir.), *cert. denied*, 516 U.S. 869 (1995) ("*Daubert II*")]. That the expert failed to subject his method to peer-review and to develop his opinion outside the litigation is not dispositive, but if these guarantees of reliability are not satisfied, the expert "must explain precisely how [he] went about reaching [his] conclusions and point to some objective source . . . to show that [he has] followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in [his] field." *Id*.

*Lust v. Merrell Dow Pharmaceuticals, Inc.*, 89 F.3d 594, 597 (9th Cir. 1996) (quoting *Daubert II*, 43 F.3d at 1317–1319. "[T]he test under Daubert is not the correctness of the expert's conclusions but the soundness of his methodology." *Daubert II*, 43 F.3d at 1318. The gatekeeping function applies to all expert opinions, whether based on specialized, technical, or scientific knowledge. *Kumho Tire Co.., Ltd. v. Carmichael*, 526 U.S. 137, 148–49 (1999). We "determine reliability in light of the particular facts and circumstances of the particular case." *Id*. at 158.

In this case, Kett moves to exclude the Report on the basis that (1) the underlying data is unreliable (Dkt. 340 at 6–13) and (2) the methodology is not based on sound scientific principles (Dkt. 354 at 2–3). The Court will address each issue separately.

**A.    Reliability**

First, Kett moves to exclude the Report because the tests and collection of data were outside of Rawls' direction and control. Dkt. 340 at 7. However, "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or

1  personally observed." Fed. R. Evid. 703.  According to the rules of evidence, Mr. Rawls

2  does not need to personally observe the collection of data.  Kett fails to provide any

3  authority to the contrary.  Therefore, Kett's argument is without merit.

4        Next, Kett's expert, Richard Klopp, attacks the accuracy of the Report's

5  underlying data and the manner in which the data was collected.  *See* Dkt. 354, Exh. A,

6  Declaration of Richard Klopp.  For example, Mr. Klopp questions the testers' failure to

7  calibrate the measuring devices, the consistency of the tests performed on different data

8  collection points, and the failure to account for any possible error in the data collected.

9  These attacks, however, go to the weight of the evidence and not the admissibility of the

10 evidence: "Vigorous cross-examination, presentation of contrary evidence, and careful

11 instruction on the burden of proof are the traditional and appropriate means of attacking

12 shaky but admissible evidence." *Daubert*, 509 U.S. at 595.  In other words, these issues

13 are best left to the factfinder to weigh during the battle of the experts instead of the Court

14 to weigh when considering the exclusion of an expert.  Therefore, the Court denies Kett's

15 motion to exclude on these issues.

16 **B.   Methodology and Conclusions**

17       Kett contends that "Mr. Rawls' 'test methodology' was not based on basic laws of

18 physics or scientifically valid principles and should be excluded . . . ." Dkt. 354 at 2.

19 The underlying physics that Mr. Rawls basis his opinion on are relatively simple: higher

20 amperage correlates to increased power, assuming constant voltage, and higher force

21 correlates to increased work, assuming some constants such mass, distance, speed and

22

friction.[3] *See* Dkt. 365, Declaration of R. Lee Rawls, ¶ 4.  The problem, however, occurs when Mr. Rawls makes the leap from data of increased power and work to the conclusion that these increases lead to premature wear/failure of the tool.  On this point, the Supreme Court provides as follows:

> [C]onclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered. *See Turpin v. Merrell Dow Pharmaceuticals, Inc.*, 959 F.2d 1349, 1360 (6th Cir.), *cert. denied*, 506 U.S. 826, 113 S.Ct. 84, 121 L.Ed.2d 47 (1992). That is what the District Court did here, and we hold that it did not abuse its discretion in so doing.

*General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

In this case, PacTool has failed to show that the Report's proffered conclusions are connected to the underlying data by anything other than the *ipse dixit* of Mr. Rawls.  In his declaration, Mr. Rawls provides that "[a]ll else being equal, tools that experience higher loads/forces will, over time, tend to fail sooner or wear more, than tools that experience lower loads."  Dkt. 365, ¶ 4(d).  Mr. Rawls declares that this principle is "self-evident."  *Id*. ¶ 26.  The term "self-evident" conveys the idea that the principle is widely accepted and could be supported by some accepted literature on the subject.  Although PacTool did submit some scientific literature regarding stress and fatigue, it failed to connect the gap between the data and the proffered conclusions.

---

[3] The assumptions regarding the constants as well as the tester's ability to maintain these constants throughout the tests are other issues regarding the reliability of the underlying data.

1        In support of his conclusion, Mr. Rawls submitted two pages of a standard
2 handbook for mechanical engineers.  Dkt. 346 at 22–23 (MARKS STANDARD
3 HANDBOOK FOR MECHANICAL ENGINEERS (9th ed. 1978) ("Handbook")).  The
4 Handbook provides that fatigue is "generally understood as the gradual deterioration of a
5 material when it is subjected to repeated loads." *Id*. at 5-9.  The Handbook describes how
6 a specimen is tested with varying loads to produce failure of the specimen.  Notably, the
7 Handbook also provides that "[b]y choosing lower and lower stresses, a value may be
8 obtained that will not produce failure, regardless of the number of applied cycles.  This
9 stress value is called the **fatigue limit**." *Id* (emphasis in original).  Thus, the fact that an
10 object experiences higher stress does not show that it will fail sooner than if the object
11 experienced lower stress, especially if the higher stress is below the fatigue limit of the
12 object.  The proffered literature does not support Mr. Rawls' extrapolation from the
13 underlying data.
14        More importantly, Mr. Rawls provides no support for his contention that a motor
15 that consumes more amperage will fail sooner.  Mr. Rawls opines that, at the final
16 collection point, Kett's motor will fail sooner because it is consuming between
17 approximately .25 additional amps (*see* Report at 15) and 1 additional amp (*see* Report at
18 12).  The record is silent on this issue, and the Court cannot accept this opinion as true
19 solely because Mr. Rawls says it is true.
20        Therefore the Court grants Kett's motion to exclude the Report and related
21 testimony of Mr. Rawls because "there is simply too great an analytical gap between the
22 data and the opinion proffered." *Joiner*, 522 U.S. at 146.

ORDER - 8

## IV. ORDER

Therefore, it is hereby **ORDERED** that Kett's motion to exclude the expert opinion of Rawls (Dkt. 340) is **GRANTED** and PacTool's motion to strike (Dkt. 356) is **DENIED.**

Dated this 22nd day of August, 2012.

BENJAMIN H. SETTLE
United States District Judge